## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:

NATHAN CYRIL STONER AND
JACQULYN MARIE STONER,

    Plaintiffs,

vs.

SELECT PORTFOLIO SERVICING, INC.,

    Defendant.

_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, NATHAN CYRIL STONER and JACQULYN MARIE STONER (hereinafter "Plaintiffs"), hereby file their Complaint against Defendant, SELECT PORTFOLIO SERVICING, INC (hereinafter "Defendant SPS"), and allege:

### INTRODUCTION

1. This is an action brought by a consumer for Defendant SPS's violation of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA"), and its implementing regulations.

2. The Consumer Financial Protection Bureau ("CFPB") is the primary regulatory agency authorized by Congress to supervise and enforce compliance of RESPA. The CFPB periodically issues and amends mortgage servicing rules under Regulation X, 12 C.F.R. § 1024, RESPA, and the respective implementing regulations.

3. Specifically, Plaintiffs seek the remedies as provided in RESPA for Defendant SPS's failure to comply with Section 2605(k) of RESPA, and Section 1024.41 of Regulation X.

4. All conditions precedent to the filing of this action have been satisfied.

## JURISDICTION

5. Jurisdiction of this Court arises under 28 U.S.C. § 1331 because the Complaint alleges a federal claim and requires the resolution of substantial questions of federal law.

6. Moreover, this case is a civil action arising under the laws of the United States over which this Court has original jurisdiction under 28 U.S.C. § 1331.

7. Venue in this District is proper because Plaintiffs reside in Broward County, Florida and this is the District where a "substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).

## PARTIES

8. At all times material hereto, Defendant SPS was and is a foreign profit corporation with its principal place of business at 3217 S Decker Lake Drive, Salt Lake City, Utah 84119. Defendant SPS is duly licensed to transact business in the State of Florida, and lists its registered agent as Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

9. At all times material hereto, Defendant SPS is and was a loan servicer as the term is defined in 12 U.S.C. § 2605(i)(2) and 12 C.F.R. § 1024.2(b), that services the loan obligation secured by a mortgage upon the Plaintiffs' residential property, located at 4875 SW 163rd Ave., Southwest Ranches, Florida 33331 (the "Subject Property").

10. At all times material hereto, Plaintiffs owned and continue to own the Subject Property, which is located in Broward County, Florida.

11. The Subject Property is a residential single-family home structure.

12. At some point in time prior to the violations alleged herein, the Defendant SPS was hired to service the subject loan.

13. The subject loan is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1) and 12 C.F.R. § 1024.2(b) and referred to by Defendant SPS as account number ******0865.

## BACKGROUND AND GENERAL ALLEGATIONS

14. On or about August 24, 2018, Plaintiffs entered into a promissory note agreement with Angel Oak Mortgage Solutions LLC (the "Note") for what they intended to be their primary residence. The Note was secured by a mortgage on the Subject Property (the "Mortgage") (the "Note" and the "Mortgage" are collectively referred to as the "Loan").

15. On June 4, 2020, a loss mitigation application ("LMP") was submitted on behalf of the Plaintiffs to Defendant SPS. *See* Fax Confirmation dated June 4, 2020 attached hereto as **Exhibit "A"**.

16. Plaintiffs' LMP specifically included documentation evidencing that Plaintiff Jacqulyn Stoner held two jobs during the 2018-2019 time period as both a veterinarian technician for Robert Scott DVM, PA and as a nurse for Memorial Healthcare System.

17. By way of example, the LMP contains a Clients Information sheet describing Plaintiff Jacqulyn Stoner as being currently employed by Robert Scott DVM, PA. as a veterinarian technician. The LMP also contains paystubs and W-2 Wage and Tax Statements for 2018 from Robert Scott DVM, PA issued to Plaintiff Jacqulyn Stoner.[1] The LMP also included W-2 Wage and Tax Statements for 2018 issued by Memorial Healthcare System.[2] *See* LMP employment records, attached hereto as **Exhibit "B"**.

---

[1] The paystubs and W-2's by Robert Scott DVM, PA are issued to Jacqulyn M. Donofrio – Plaintiff Jacqulyn Stoner's maiden name.
[2] The W-2 by Memorial Healthcare System is issued to Jacqulyn M. Donofrio – Plaintiff Jacqulyn Stoner's maiden name.

18. On June 17, 2020, the Plaintiffs provided Defendant SPS additional documents for consideration including two separate W-2 Wage and Tax Statements for 2019 issued by Memorial Healthcare System and Robert Scott DVM, PA to Plaintiff Jacqulyn Stoner. *See* Additional LMP employment records, attached hereto as **Exhibit "C"**.

19. On July 16, 2020, the Plaintiff Jacqulyn Stoner provided Defendant SPS a post-dated letter of explanation (the "LOE"), describing the nature of her employment status. Specifically, Plaintiff Jacqulyn Stoner advised Defendant SPS that due to the impact of COVID-19, she was furloughed by the Memorial Healthcare System, the last monies received from them occurred on June 10, 2020, and that she did not know when she would be back to work. *See* LOE dated July 29, 2020, attached hereto as **Exhibit "D"**.

20. After additional requests for documents from Defendant SPS and Plaintiffs' submission of documents responsive to those requests, on August 10, 2020, Defendant SPS acknowledged that Plaintiffs had submitted a complete loss mitigation package. This acknowledgement advised that a determination of which loss mitigation options, if any, would be provided within 30 days. *See* Acknowledgement Letter dated August 10, 2020, attached hereto as **Exhibit "E"**.

21. However, on August 13, 2020, Defendant SPS sent a communication requesting pay stubs from each Plaintiff as well as a military leave and earning statement. *See* Additional Documents Request Letter dated August 13, 2020, attached hereto as **Exhibit "F"**.

22. The following day, on August 14, 2020, Defendant SPS sent an identical communication *again* requesting pay stubs from each Plaintiff as well as a military leave and earning statement. *See* Additional Documents Request Letter dated August 14, 2020, attached hereto as **Exhibit "G"**.

23. On August 17, 2020, Plaintiffs submitted the requested additional documents to Defendant SPS via fax. *See* Fax Confirmation dated August 17, 2020 attached hereto as **Exhibit "H"**.

24. The documents Plaintiffs submitted on August 17, 2020 included the most recent pay stubs for each Plaintiff. This submission also included a letter explaining that neither of the Plaintiffs are in the military. *See* Military Letter dated August 17, 2020, attached hereto as **Exhibit "I"**

25. Despite previously receiving the updated pay stubs for each Plaintiff and a letter explaining that neither of the Plaintiffs are in the military, on August 21, 2020, Defendant SPS issued another identical communication requesting the <u>same exact information</u> – updated pay stubs for each Plaintiff and a military leave and earning statement. *See* Additional Documents Request Letter dated August 21, 2020, attached hereto as **Exhibit "J"**.

26. Shockingly, on August 24, 2020, Defendant SPS issued yet again another identical communication <u>requesting the same documents previously requested and that the Plaintiffs had already provided</u> – updated pay stubs for each Plaintiff and a military leave and earning statement. *See* Additional Documents Request Letter dated August 24, 2020, attached hereto as **Exhibit "K"**.

27. Having already provided the requested documents back on August 17, 2020 and frustrated with Defendant SPS's duplicative requests for documents inapplicable to their review, on September 11, 2020 the Plaintiffs sent via certified mail a communication to Defendant SPS advising that the previously requested documents were provided. Plaintiffs' letter also reminded Defendant SPS that they must provide a determination if any loss mitigation options would be provided to the Plaintiffs within the allotted time after receiving a complete loss mitigation package. *See* 10-Day Notice Letter dated September 11, 2020, attached hereto as **Exhibit "L"**.

28. Defendant SPS received the 10-Day Notice Letter on September 15, 2020.

29. On September 29, 2020, Defendant SPS issued another communication to the Plaintiffs, now requesting clarification "…if Memorial Health and Robert Scott DVM is the same company or not." *See* Additional Documents Request Letter dated September 29, 2020, attached hereto as **Exhibit "M"**.

30. Defendant SPS's request for clarification on whether "…Memorial Health and Robert Scott DVM is the same company or not" is nonsensical and a delay tactic by Defendant SPS. The Plaintiffs previously provided Defendant SPS ample documentation that on its face shows that Memorial Health and Robert Scott DVM are not the same company, including distinct paystubs, W-2's, and a letter explaining that Plaintiff Jacqulyn Stoner was furloughed by Memorial Health and has not received income from them since that time.

31. As such, Defendant SPS's Additional Documents Request Letter dated September 29, 2020 does not render the loss mitigation package incomplete because the additional information requested is not required, duplicative, redundant, and can easily be clarified by looking at the documents provided to date.

32. In a final effort to avoid litigation, the Plaintiffs sent via certified mail a communication to Defendant SPS advising that all documents requested have been provided and demanding a determination as to which loss mitigation options, if any, would be provided to the Plaintiffs. *See* 5-Day Notice Letter dated October 2, 2020, attached hereto as **Exhibit "N"**.

33. Defendant SPS received the 5-Day Notice Letter on October 8, 2020.

34. Pursuant to 12 C.F.R. § 1024.41(c)(2)(iv), upon Plaintiffs' submission of the requested additional documents on August 17, 2020, the LMP shall be considered facially complete.

35. After receipt of Plaintiffs' facially complete LMP, Defendant SPS was required to provide a written notice stating which loss mitigation options, if any, Defendant SPS would offer

Plaintiffs within thirty (30) days after the application was considered "complete." Defendant SPS failed to respond despite being required to do so pursuant to 12 C.F.R. § 1024.41(c)(1).

36.     Instead of providing notice of potential loss mitigation options, Defendant SPS issued two more notices to the Plaintiffs, requesting the same information that was previously provided (updated pay stubs for each Plaintiff) and information that was simply inapplicable to the loss mitigation review (military statements and earnings despite both Plaintiffs advising that they were not in the military).

37.     As a further dilatory tactic, Defendant SPS requested clarification regarding two separate employers for Plaintiff Jacqulyn Stoner, when such clarification was unnecessary, redundant, easily ascertainable from the documents previously provided and done only as an effort to stall or delay having to respond to the Plaintiffs regarding potential loss mitigation options.

38.     To date, Defendant SPS has failed to or refused to comply with 12 C.F.R. § 1024.41(c), in that no written notice within thirty (30) days of receipt of a "complete loss mitigation application" stating which loss mitigation options, if any, will be offered to Plaintiffs.

39.     Plaintiffs retained Loan Lawyers, LLC ("Loan Lawyers") as counsel and Jenkins Lorenzo, LLC ("Jenkins Lorenzo") as co-counsel for legal representation in this action and has agreed to pay a reasonable attorney's fee.

## DAMAGES

40.     Plaintiffs have been injured and suffered actual damages by virtue of Defendant SPS's repeated violations of those legal rights and protections which Congress provided to Plaintiffs and other consumers like him. The threshold of Defendant SPS's violations stem from repeated failures to respond to the LMP submitted for Plaintiffs. Plaintiffs' injuries result in-part from the Defendant SPS's invasion of a legally protected interest that is concrete, particularized,

and actual. Simply stated, Plaintiffs' procedural rights under RESPA were violated by not providing a response to the LMP despite additional notice of same via the 5-Day Notice Letter.

41. Plaintiffs are entitled to actual damages as a result of Defendant's failure to comply with Regulation X and RESPA, pursuant to 12 U.S.C. § 2605(f)(1)(A), including but not limited to: (1) photocopying costs and postage costs incurred in mailing Plaintiffs' 5-Day Notice Letter; and (2) photocopying costs, postage costs, and reasonable attorney's fees incurred as a result of having to send additional correspondences due to Defendant SPS's failure to adequately respond to Plaintiffs' LMP, which includes the 5-Day Notice Letter.

42. Plaintiffs have also suffered actual damages in the form of emotional distress, anxiety, the constant fear of losing their property, worry, embarrassment, frustration, and anguish as a result of the ongoing failures of Defendant SPS to address Plaintiffs' concerns relating to their mortgage, while simultaneously fearful of an imminent state court foreclosure action.

43. Defendant SPS has also violated Regulation X with respect to the numerous loans it services, including but not limited to, the following loans:

   a. With respect to CFPB Consumer Complaint ID 2236734, Defendant SPS violated RESPA by failing to review a "facially complete" modification package.

   b. With respect to CFPB Consumer Complaint ID 2395578, Defendant SPS violated RESPA by failing to acknowledge the consumer's modification.

   c. With respect to CFPB Consumer Complaint ID 2369933, Defendant SPS violated RESPA by failing to timely respond and review the consumer's modification package.

   d. With respect to CFPB Consumer Complaint ID 2347916, Defendant SPS violated RESPA by failing to timely respond and review the consumer's modification package.

44.     Plaintiffs are entitled to statutory damages in an amount not greater than $2,000.00 pursuant to 12 U.S.C. § 2605(f)(1)(B), as a result of Defendant SPS's pattern or practice of noncompliance with Regulation X and RESPA.

45.     Additionally, Plaintiffs are entitled the costs of this action, together with a reasonable attorney's fee as determined by the court and pursuant to 12 U.S.C. § 2605(f)(3).

## COUNT I –VIOLATION OF 12 U.S.C. § 2605(k)

46.     Plaintiff realleges and incorporates by reference paragraphs 1 through 45 above.

47.     Section 6, Subsection (k) of RESPA states in relevant part:

> **(k) Servicer prohibitions**
> **(1) In general**
>     A servicer of a federally related mortgage shall not--
>     …
>     **(C)** fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties;
>     …
>     **(E)** fail to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of this chapter.
>
> 12 U.S.C. § 2605(k)(emphasis added)

48.     Section 1024.41 of Regulation X was promulgated pursuant to Section 6 of RESPA and thus subject to RESPA's private right of action. *See 78 Fed. Reg. 10696,* 10714, FN. 64 (Feb. 14, 2013) ("The [CFPB] notes that regulations established pursuant to section 6 of RESPA are subject to section 6(f) of RESPA, which provides borrowers a private right of action to enforce such regulations"). *See also 78 Fed. Reg.* at 10737, 10822 ("The Bureau relies on its authority under sections 6(j)(3), 6(k)(1)(C), 6(k)(1)(E) and 19(a) of RESPA to establish final rules setting forth obligations on servicers to comply with the loss mitigation procedures in § 1024.41").

49. The CFPB's authority to prescribe such regulations under Section 2605(k)(1), is stated in Section 2617 of RESPA: "The [CFPB] is authorized to prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of this chapter." 12 U.S.C. § 2617.

50. Plaintiffs loss mitigation package was deemed facially complete as of August 17, 2020 when Plaintiffs provided documents responsive to Defendant SPS's request for same. All subsequent requests made by Defendant SPS were duplicative, already provided, not reasonably related to Plaintiffs specific situation and/or unnecessary.

51. Defendant has failed to or refused to comply with 12 C.F.R. § 1024.41(c)(1) in that no written notice was provided to Plaintiffs within thirty (30) days of receipt of a complete loss mitigation application stating which loss mitigation options, if any, would be offered.

52. As such, the Defendant has violated 12 U.S.C. § 2605(k)(1)(C) and § 2605(k)(1)(E).

53. As a result of the above violations, Plaintiffs are entitled to recovery for actual and statutory damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs NATHAN CYRIL STONER and JACQULYN MARIE STONER respectfully requests that this Honorable Court enter an order granting judgment for the following:

(a) That Defendant SPS be required to provide a written notice and determination in compliance with 12 C.F.R. § 1024.41(c)(1);

(b) For actual damages, statutory damages, costs and reasonable attorney's fees, pursuant to 12 U.S.C. § 2605(f); and

(c) Such other relief to which this Honorable Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs NATHAN CYRIL STONER and JACQULYN MARIE STONER hereby demands a trial by jury of all issues so triable.

Dated this 20th day of October 2020.

Respectfully Submitted,

                              **JENKINS LORENZO, LLC**
*Co-Counsel for Plaintiffs*
18851 NE 29th Avenue, Ste. 700
Aventura, Florida 33180
Tel: (305) 456-1450

By: */s/ Chase E. Jenkins, Esq.*
    Chase E. Jenkins, Esq.
    Florida Bar No. 94261
    cjenkins@jenkinslorenzo.com
    Jorge "J.D." Lorenzo, Esq.
    Florida Bar No. 81702
    jlorenzo@jenkinslorenzo.com

    */s/ Laura Hoy Chebat*
    Laura Hoy Chebat, Esq.
    Florida Bar No. 59025
    LOAN LAWYERS, LLC
    *Co-Counsel for Plaintiff*
    3201 Griffin Road, Suite 100
    Fort Lauderdale, FL 33312
    Telephone: (954) 523-4357
    laura@fight13.com